Christopher Davis CDC# AN4950
Name and Prisoner/Booking Number

High Desert State Prison
Place of Confinement

Facility C P.o.Box 3030
Mailing Address

Susanville, CA. 96127
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**

**Apr 18, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Christopher Brandon Davis                    ,
(Full Name of Plaintiff)          Plaintiff,

v.

(1) M. Portillo, individual and official capacity,
(Full Name of Defendant)

(2) Molina, individual and official capacity,

(3) C. Brown, individual and official capacity,

(4)                                          ,
                    Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:22-cv-675-EFB (PC)

(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**
JURY TRIAL DEMANDED

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:

    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
    ☐ Other: _____

2.  Institution/city where violation occurred: Corcoran State Prison, Corcoran, CA.

## B. DEFENDANTS

1. Name of first Defendant: M. Portillo . The first Defendant is employed as: Correctional Officer at Corcoran State Prison
   (Position and Title)                                    (Institution)

2. Name of second Defendant: Molina . The second Defendant is employed as: Correctional Officer at Corcoran State Prison
   (Position and Title)                                    (Institution)

3. Name of third Defendant: C. Brown . The third Defendant is employed as: Correctional Lieutenant at Corcoran State Prison
   (Position and Title)                                    (Institution)

4. Name of fourth Defendant: _____ . The fourth Defendant is employed as: _____ at _____
   (Position and Title)                                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?        ☐ Yes        ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____
      _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____
      _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____
      _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.  CAUSE OF ACTION

### CLAIM I

1.    State the constitutional or other federal civil right that was violated:  _First Amendment_

2.    **Claim I.**  Identify the issue involved.  Check **only one.**  State additional issues in separate claims.
   ☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care
   ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☒ Retaliation
   ☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____

3.    **Supporting Facts.**  State as briefly as possible the FACTS supporting Claim I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

   _See Pages 3.1 to 3.6_

4.    **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

   _See p.3.5 pp# 20, p.3.6 P#21_

5.    **Administrative Remedies:**
   a.    Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes   ☐ No
   b.    Did you submit a request for administrative relief on Claim I?     ☒ Yes   ☐ No
   c.    Did you appeal your request for relief on Claim I to the highest level?     ☒ Yes   ☐ No
   d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

1) Christopher Brandon Davis "Plaintiff" is a state prisoner currently incarcerated in High Desert State Prison and currently serving consecutive terms of 12 years for Robbery with Gang Enhancement and 6 years for Battery on Non-confined Person, for total term of 18 years.

2) While housed at Corcoran State Prison in Administrative Segregation, on March 5, 2021 Plaintiff had a medical appointment scheduled at CTC for 10:00 Am. At approx. 8 am, Defendant M. Portillo and his partner came to my cell and asked me in an agitated manner "Are you going to the medical appointment or not?" Plaintiff responded, "Yes, but its in two hours"

3) A popular tactic amongst some CTC Transportation staff is to try and avoid going back and forth between CTC and the housing units to pick up inmates. If more than one inmate has a medical appointment from the same housing unit, despite the time of the appointment, the transportation staff will try to take all the inmates with scheduled appointments at the same time. Even though the appointments could be hours apart as in Plaintiffs case. Plaintiff would be standing, waiting in a single-man, standing only holding cage hours before the appointment. Plaintiff has been previously subjected to this on a different occasion for 3 hours. Upon information, belief, knowledge and experience majority of inmates will refuse to go to their appointment all together just knowing they would be stuck standing for hours in the cage waiting for their appointment to be called.

4) Plaintiff alleges Defendant M. Portillo knows this and attempts to pick up inmates hours before their scheduled appointment in an effort to force the inmate to "refuse" their medical appointment, thus making "less work" for himself, especially during the summer when its hot. "C/O Portillo has a habit, routine or practice of being confrontational with prisoners during "strip-outs" in the hope of frustrating and or angering a prisoner into refusing the medical appointment in order to do as less work as possible. (SEE EXHIBIT A, DECLARATION OF RONALD MARTINEZ)

5) CTC Transportation officers have been warned not to do the above and accomodate the patient/inmate and pick them up 15/30 minutes before their scheduled appointment to avoid excess 'refusals' and a backlog of rescheduling the patient/inmate. So with a smirk on his face, Defendant M. Portillo told Plaintiff,

6.) Due to the time of day, as well as the time of the scheduled appointment, Plaintiff was busy at work on his college courses and had his paperwork arranged across his cell, bed and desk. Plaintiff asked Defendant M. Portillo if he could have a moment to put his work away and clean up.[1] Defendant M. Portillo became impatient and angrier and now said in a raised voice "ARE YOU GOING OR NOT!? HURRY UP I AINT GOT ALL DAY!"

7.) Observing Defendant M. Portillo's aggressiveness Plaintiff halted putting away his things and went to the cell door and began undressing for the mandatory departmental procedure of an unclothed body search prior to escort. When the body search was completed and Plaintiff was getting dressed and prepared for escort, Plaintiff then asked Defendant M. Portillo "Why are you here 2 hours early?". Defendant M. Portillo repeated himself "You dont have to go, You can refuse."

8.) At this point Plaintiff was finishing putting his clothing back on prior to being placed in restraints for escort and Plaintiff told Defendant M. Portillo, "When we get to CTC I want to speak with the sergeant," Defendant M. Portillo's supervisor. Instantly Defendant M. Portillo became very aggressive and slammed closed the tray slot and locked it. Then Defendant M. Portillo pointed his finger at Plaintiff angrily stating "YOU AINT DOING SHIT! YOUR NOT GOING NOWHERE! YOU REFUSED!" Then turned and walked away with his partner.

9.) Later in this day on March 5, 2021 Plaintiff alleges that in an attempt to justify Plaintiffs refusal to his medical appointment and to conceal his misconduct of lying that Plaintiff refused his medical appointment, Defendant M. Portillo vindictively and with malicious intent fabricated and drafted a CDC-114A Inmate Segregation Record stating "Inmate became hostile during his unclothed body search and made statements, 'I know how you get down, fuck you. I aint stripping out! your garbage!"

---

1. Prior to going to any scheduled appointment medical or other wise, Plaintiff puts everything away to keep his living quarters clean and presentable as well as washes his face, brush teeth, combs hair to be presentable and maintain good hygiene habits.

10.) Defendant M. Portillo is well aware the CDC-114A's are permanent documents retained in Plaintiffs Central File and could have a negative impact on Plaintiffs future classifications and housing assignments. Defendant M. Portillo is not a 'rookie' and is an active representative in the CCPOA for Correctional Officers. Moreover Defendant M. Portillo is aware Plaintiff is a 'GP'', General Population prisoner and the prison politics amongst the prisoners against any act of insti-igating, antagonizing or escalating conflict with correctional officers in nature has the potential to cause serious harm to a 'GP' prisoner should it rise to the level Defendant M. Portillo is falsely portraying Plaintiffs actions on the morning of March 5, 2021.

11.) On March 5, 2021 Plaintiff filed an appeal/grievance for the second time alleging staff complaint/ staff misconduct with an adverse affect on Plaintiffs health, due to the denial of medical appointment concerning substance abuse treatment. (SEE EXHIBIT B p.1)

12.) Plaintiff alleges the incident on March 5, 2021 was not Defendant M. Portillo's first time cond-ucting himself in such a disdainful manner when attempting to escort Plaintiff to his medical appoint-ment at CTC for substance abuse treatment. Previously on February 5, 2020 Plaintiff filed grievance that went missing. (SEE EXHIBIT B, p.1-2)

13.) On April 17, 2021 Prison Officials denied Plaintiffs grievance against Defendant M. Portillo without interview of either party and decided solely on the claim made by Defendant M. Portillo documented on Plaintiffs CDC-114 folder, "Inmate became hostile during his unclothed body search and made statements, 'I know how you get down, fuck you, I aint stripping out! Your Garbage!'," which justifies refusal according to Operational Procedure 220 section 'J' security, "an unclothed body search shall be con-ducted within the assigned cell prior to the inmate being removed from the cell." (Id. AT pp. 4-5).

14.) On April 22, 2021 Plaintiff sought relief at the CDCR Office of CHIEF of Appeals in Sac-ramento as Defendant M. Portillo's conduct on March 5, 2021 not being his first time displaying disdain toward inmates, nor is Plaintiff the first to accuse/allege Defendant M. Portillo of such unprofessional and reprehensible behavior, as well as the notification of Plaintiffs ability to call wit-nesses concerning Defendant M. Portillos comments and conduct on March 5, 2021. (Id. AT p. 6)

15.) On August 20, 2021 Plaintiff recieved response from CDCR Chief in Sacramento. The decision response was dated June 26, 2021 with the decision being "TIME EXPIRED". Time Expired means the Grievance Chief did not "have time" during the 60 days to respond to the complaint. This is a new policy CDCR is now using to get around having to answer inmates grievances. (Id AT pg 9-10)

16.) Approximately 82 days after the date March 5, 2021 which Plaintiff submitted his grievance to complain about Defendant M Portillo's misconduct and while awaiting response from the Chiefs Level, on May 27, 2021 Defendant M. Portillo and his partner Defendant Molina arrive at Plaintiffs cell door at approximately 8:35 am. Defendant M Portillo asked Plaintiff if he was going to go to his medical appointment, to which Plaintiff said "YES" and began to address preparing for the unclothed body search protocol prior to escorting to the medical appointment. Defendant M. Portillo became angry and told Plaintiff he could not wear his personal socks, they have to be state issue, but allowed Plaintiff to wear his personal boxers and personal shoes. Because of prior confrontations by Defendant M. Portillo, and to avoid being removed from Plaintiffs substance abuse treatment program for missing medical appointments (2-5-2020, 3-5-2020) Plaintiff chose to not escalate Defendant M Portillo's well known aggressive behavior, and put on his shoes without socks. As Plaintiff was getting redressed he asked Defendant M Portillo to speak to the Sergeant when they arrive at CTC medical appointment. Defendant M. Portillo immediately withdrew the escort restraints, slammed closed and locked the tray slot and said "You aint doing shit! Your REFUSING!" and took off with his partner Defendant Molina. While Defendant M. Portillo and Defendant Molina were walking away, Defendant M. Portillo made a gesture with one finger while exclaiming "Thats what happens when you want to act up!"

17.) Upon information, belief and knowledge, an unnamed Sergeant or his superior ordered a different and new escort team to escort Plaintiff to his medical appointment at CTC.

18.) A short while later, Defendant Molina and an unnamed officer arrived at Plaintiffs cell door to escort Plaintiff to his medical appointment. Defendant Molina conducted the unclothed body search without incident. During the process and preparing for escort, Plaintiff was briefly conversing

3.4

with Defendant Molina about his partner, Defendant M.Portillo conduct to which Defendant Molina replied "Thats my Partner, Ride or Die". After being placed in restraints and escorted out of the cell and down the stairs, unbeknownst to Plaintiff, Defendant M. Portillo was hiding under the stairs laying in wait for Plaintiff to be escorted directly to him. Once Plaintiff and Defendant Molina stepped off the stairs, Defendant Molina pulled Plaintiff by his escort guiding arm making a U-turn directing Plaintiff towards Defendant M.Portillo. Plaintiff was suprised, confused, then scared and frightened to see Defendant M.Portillo there waiting... Plaintiff pleaded with Defendant Molina to keep Defendant M.Portillo away from him for fear of injury. Defendant M.Portillo then grabbed Plaintiff by the back of the neck and pulled down to bring Plaintiffs right ear to Defendant M.Portillos mouth, so close Plaintiff could feel the heat off his breath. Defendant M. Portillo then spoke in a menacing voice and threatened Plaintiff by stating "You better listen and shut the fuck up or else you know!" which was immediately followed by a hard fist punch to Plaintiffs lower back, a right "kidney shot". Plaintiff made a hurting growl sound. Plaintiff was scared and wanted to yell out for help but was more afraid of that because Plaintiff feared Defendant M. Portillo would continue to assault and punch him even more and have his partner Defendant Molina jump in and assist with the assault on Plaintiff.

19.) Plaintiff did not say anything, waiting for the suprise attack to continue. When nothing happened Plaintiff only nodded his head in submission to Defendant M. Portillos demands and threats and remained silent filled with fear. Defendant M. Portillo laughed and said "there, now thats better".

20) Plaintiff alleges Defendant M.Portillo threatened him with future assaults, great bodily harm of injury and even death, then with a show of sincerity wantonly punched Plaintiff in the right kidney causing severe pain because of Plaintiff filing an inmate grievance against Defendant M.Portillo complaining of his misconduct of denying access to medical and fabricating CDCR documents. Plaintiff further alleges Defendant M.Portillos retaliatory acts has chilled Plaintiff from excersizing his First Amendment Rights. Defendant M.Portillo's retaliatory threats and punch, assault on Plaintiff did not reasonably advance a legitimate correctional goal. Plaintiff alleges force was applied unnecessary and maliciously and sadistically with the specific intent to inflict pain and cause harm to Plaintiff

3.5

to prevent Plaintiff from filing future grievances and/or complaints against Defendant M. Portillo.

21) Plaintiff further alleges, Defendant Molina was deliberately indifferent to Plaintiff's safety by knowingly escorting Plaintiff directly to Defendant M. Portillo, ignoring the immediate threat and danger Defendant M. Portillo presented to Plaintiff as well as Plaintiff's pleas" to be kept away" from Defendant M. Portillo. Plaintiff alleges Defendant Molina failed to intervene and protect Plaintiff from his partner Defendant M. Portillo's threats and assault against Plaintiff. Defendant Molina acted with a sufficiently culpable state of mind as he held Plaintiff 'in place' while allowing his partner Defendant M. Portillo to assault Plaintiff, to prevent Plaintiff from making excessive movement during the assault thereby not causing a scene so as to go unnoticed.

3.6

# CLAIM II

1. State the constitutional or other federal civil right that was violated: _Eighth Amendment_

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _See page 4-1 to 4.5_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   _See p.4.4  ¶#38, p.4.5 ¶#39_

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim II?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

CLAIM III; EIGHTH AMENDMENT; EXCESSIVE FORCE

22.) The facts and allegations previously set forth in paragraphs 1 through 21 are incorporated herein by reference.

23.) After Defendant M. Portillos threats and hard punch to Plaintiffs lower right back "kidney shot", Defendants M. Portillo and Molina started escorting Plaintiff through the rotunda to the waiting transportation vehicle, wherein Plaintiff pleaded with Defendant Molina about his partner, Defendant M. Portillos' misconduct, to which Defendant Molina replied "You know what you can do, make your move". Plaintiff was speechless and scared, staying silent filled with fear. As the escort arrived at CTC, Plaintiff stepped off the transport vehicle and took notice that no other escort officer was in sight, against department policy of two officers per inmate during escort, Plaintiff silently prayed for his safety as Defendant M. Portillo grabbed onto Plaintiffs waistchains and forcefully started doing the "washing machine"[2] with the waistchains on Plaintiff while stating "Lets do this".

24.) Plaintiff knew exactly what Defendant M. Portillo was attempting to do; instigating Plaintiff to push back (resist) or verbally attack Defendant M. Portillo so he could use more excessive force against Plaintiff under the guise of "Resisting a Peace Officer in the performance of his duties" or other fabricated violation.

25.) Plaintiff was already very frightened, scared and in pain from the assault and threats that just took place a few minutes before by the stairs and did not want to give Defendant M. Portillo an excuse to beat on him again and giving Plaintiff an even more serious physical and mental injuries. So Plaintiff just prayed and stayed quiet trying very hard not to fall and just walk slow so Defendant M. Portillo would not make him trip and fall and crack his head or face on the ground since Plaintiffs hands and arms were

---

[2] The "washing machine" is an illegal tactic c/o's induce upon inmates they dont like, to justify a 'resist and a take down' by the officer usually followed by a beating of the inmate. The escorting c/o pulls and pushes on the waist chains front, back, side to side constantly which forces the inmate to loose balance, trip and fall, or cause the inmate to pull/push back x attempt to turn around, giving the escorting officer an excuse to take down / bodyslam the inmate while yelling (acting) "stop resisting! stop resisting!", while using other means of force.

26.) During this time c/o's knew they were about to be fitted with body cameras and cameras covering the entire facility and all "blind spots"[3] Plaintiff was terrified that Defendant M. Portillo and his partner Defendant Molina would eventually escort him to one of these many blindspots where there would be no witnesses to beat on, assault him again, with even more malice and force this time.

27.) The reason for the body cameras and need of constant surveillance of correctional officers is due to the numerous allegations of excessive force committed by correctional officers in the blind spots that include the allegations of interalia, sodomy with foreign objects of expendable baton, fingers, and severe beating with baton, hands, feet, walls and floors.

28.) When Plaintiff finally got to the medical clinic and was seen by the Doctor, Plaintiff immediately told the Doctor he was in fear for his personal safety because of Defendant M. Portillo's threats and assault that took place only moments prior and Plaintiff was filled with anxiety and fear begging the Doctor to get a Sergeant or Lieutenant to oversee the situation and ensure Plaintiff's safety for the remainder of the medical appointment/escort. Plaintiff expressed to the Doctor he was threatened and assaulted by Defendant M. Portillo and is not safe being anywhere near or around Defendant M. Portillo. The Doctor responded by saying he can see the fear in Plaintiff's eyes and demeanor and he (Doctor) will take note of it in his records, however due to the confidentiality of the medical program[4] he could not and would not bring any supervisor, officer or otherwise into his office during the medical appointment. The Doctor told Plaintiff he would address the request to speak to a Sergeant or Lieutenant upon the conclusion of the medical appointment. The Doctor documented this conversation during Plaintiff's medical appointment on May 27, 2021. (SEE Exhibit C. p. 2 of 3)

29.) Plaintiff never spoke to a supervisor as Defendant M. Portillo rushed to get Plaintiff escorted out of CTC upon conclusion of Plaintiff's medical appointment. As Plaintiff was being escorted to the transport vehicle, Defendant M. Portillo continued subjecting Plaintiff to the "washing machine" and threatened

3. A blind spot is a location within the prison where there is no visual from cameras, c/o's, inmates or staff throughout the prison which allows illegal activity to go unnoticed (i.e. assaults, beatings)

Plaintiff saying, "You think the Doctor gives a fuck!! You heard him say its a custody issue! I'M CUSTODY PUNK! And I TOLD YOU TO SHUT THE FUCK UP ONCE ALREADY!."

30) Plaintiff was terrified. He believed certainly Defendant M. Portillo was going to trip him up and beat on him or really take him to a blind spot now. Plaintiff had trouble breathing, was nervous, sweating and his heart was pounding. Plaintiff was affraid of death by baton at the hands of Defendant M. Portillo and his partner, Defendant Molina who just stared, "madd dogging"5 Plaintiff.

31) Miraculously, Defendant M. Portillo was not able to trip up Plaintiff and escorted him back to his housing unit. Plaintiff was relieved to have made it to his housing unit and almost back into the safety of his cell without further assaults by Defendant M. Portillo or his partner Defendant Molina. ·· Plaintiff was wrong!

32) While being escorted back to Plaintiffs housing unit Defendant M. Portillo stopped the escort in the rotunda of Plaintiffs housing unit and forced Plaintiff against the wall saying " Look at the FUCKIN wall and DON'T MOVE!" in a forceful and angry tone. Defendant M. Portillo then yelled up to the buildings control booth to give him a "triangle".

33) The "triangle" is a thick piece of round stock metal that is shaped and welded like a triangle that is approximately 2'x 2'x 2'. The triangle is a modified attachment that locks onto the waist restraints which then prevents an inmate from keeping the waist chains once the inmate is placed in their cell. The c/o retains constant possession of the triangle attachment to ensure the retrieval of the waistchains from the inmate.

34) Inmates who keep the waist chains in their cell, while still cuffed entirely or partially, utilize this (stupid) tactic as a potential bargaining device to make requests or demands of custody staff to speak to a supervisor, a doctor or other things an inmate may feel he was wrongfully denied. Inmates who engage in this behavior are typically mental health participants and unruly inmates who are documented in their Central File

4. The substance abuse treatment is a confidential medical program between doctor and patient.

5. "Madd Dogging is a facial expression that portrays hate, dislike, malice towards the person they are looking at.

4.3

of the same size triangle for all escorts that require restraints.

35) Once the triangle attachment was secured onto Plaintiffs waist chains, Plaintiff was finally escorted back into his cell, always compliant. With Plaintiff inside the cell and triangle outside of the cell in Defendant M. Portillo's possession, another officer unlocked the lock of the waist chain. While still cuffed around the wrists, Plaintiff was turning around to place his wrists out of the tray slot to finish being uncuffed, but before Plaintiff could be uncuffed, Defendant M. Portillo intentionally, maliciously and sadistically pulled, a hard yank on the triangle and the waist chains causing Plaintiff to force his cuffed hands and arms outside the tray slot at a very odd angle, slamming Plaintiffs forearms into the tray slot, causing pain and bruising.

36) Plaintiff yelled in pain and then said to Defendant M. Portillo "what the fucks your problem! This shits unnecessary!" Defendant M. Portillo replied "This is what you get for reporting me! Its not over!". Defendant M. Portillo then backed off as another unnamed officer removed the cuffs. When the cuffs were removed, Defendant M. Portillo slammed and locked the tray slot and said, "Next Time." [6] Leaving Plaintiff in pain, nervous and anxious of whats going to happen 'Next Time' during escort with Defendant M. Portillo and Defendant Molina.

37) Silently Plaintiff prayed for his safety and that the officers would get issued the mandatory body cameras as soon as possible with the knowledge they just might prevent Defendant M. Portillo and his friends, fellow officers from retaliation by beating, hitting on him in the future. Plaintiffs lower back and forearms was in pain and beginning to show signs of discoloration and bruising/swelling from Defendant M. Portillo's assaults on Plaintiff.

38) Plaintiff alleges that Defendant M. Portillo used excessive force against him by acting with a sufficiently culpable state of mind by having his partner Defendant Molina, who was deliberately indifferent to Plaintiffs safety, to prepare Plaintiff for escort while he, Defendant M. Portillo hides under

---

6. Plaintiffs next medical appointment at CTC was on June 22, 2021 which Plaintiff refused going to, still being in fear of what happened to him on 5-27-2021 and the threat of 'Next Time' still ever present as the body cameras had still not yet been installed.

the stairs were Plaintiff could not see him, waiting, lying in wait until his partner Defendant Molina brought Plaintiff down the stairs and delivered Plaintiff to him. Plaintiff also alleges Defendant M. Portillos threats of Great Bodily Harm or even death coupled with punching Plaintiff on the lower back right kidney, and Defendant M. Portillos attempts to make Plaintiff fall on the ground while doing the washing machine during escort was not warranted or needed except to cause Plaintiff to suffer and inflict unnecessary and wanton pain. Defendant M. Portillo and Defendant Molina could not have reasonably percieved Plaintiff as a threat to the safety of prison staff or other inmates for the fact that Plaintiff was fully restrained and handcuffed with waist restraints while compliant at all times.

39) Plaintiff also alleges Defendant M. Portillo and Defendant Molina caused Plaintiff to suffer emotional and mental anguish of inter alia, being in fear, anxiety and nervous of future escorts to CTC, medical/dental, loss of appetite, trouble sleeping as a result of constant nightmares of being assaulted by correctional officers and constantly being scared of Defendant M. Portillo and his fellow friends and c/o's for the fact that Defendant M. Portillo is a Union Representative in the CCPOA for all correctional officers in Corcoran State Prison and could order his friends and other c/o's to assault and/or threaten Plaintiff, as well as to create, modify, destroy informational chronos, forms, requests to be placed into Plaintiffs central file affecting future custody, program, housing and privilege assignment.

4.5

**CLAIM III**

1.    State the constitutional or other federal civil right that was violated: First Amendment
FOURTEENTH AMENDENT

2.    **Claim III.** Identify the issue involved. Check only one. State additional issues in separate claims.
☐ Basic necessities        ☐ Mail                    ☐ Access to the court        ☐ Medical care
☒ Disciplinary proceedings ☐ Property                ☐ Exercise of religion       ☒ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3.    **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

See 5.1 to 5.4

4.    **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

See page 5.4, paragraph #154

5.    **Administrative Remedies.**
      a.    Are there any administrative remedies (grievance procedures or administrative appeals) available at your
            institution?                                                                    ☒ Yes  ☐ No
      b.    Did you submit a request for administrative relief on Claim III?                 ☒ Yes  ☐ No
      c.    Did you appeal your request for relief on Claim III to the highest level?        ☒ Yes  ☐ No
      d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
            did not. _____

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

5

CLAIM III ; FIRST AMENDMENT ; RETALIATION

40. The facts and allegations previously set forth in paragraph numbers 1-21 and 22-39 are incorporated herein by reference.

41. Upon conclusion of the events previously set forth, Plaintiff recieved a Rules Violation Report #7091239 authored by Defendant M. Portillo in response to the threats and assault upon Plaintiff. In Defendant M. Portillo's report, he again resorted to the tactic of choice, the fabrication of events and facts that will, upon first glance, clear Defendant M. Portillo of any misconduct. In doing so, Defendant M. Portillo vindictively and with malicious intent fabricated and drafted another CDC 114 and a Rules Violation Report in retaliation stemming from Plaintiff filing complaints and grievances against Defendant M. Portillo and his conduct, stating "Inmate became hostile and stated, 'Oh, your gonna be that guy and check out my junk. You're so professional. You're the only mother fucker who does this shit, you have a fucking problem wanting to see another mans junk! Your a little bitch, fuck you punk." (SEE EG EX.C pp. 1 of 4 & 1 of 3)

42. Defendant M. Portillo is well aware the documents retained in Plaintiffs Central File can have a negative impact on Plaintiffs future classifications and housing assignments. Moreover Defendant M. Portillo is aware Plaintiff is a General Population (GP) prisoner and the prison politics amongst the prisoners against any act of sexual misconduct up to and including harrassment, contact and references as in Plaintiffs case, has the potential to cause serious harm to a "GP" prisoner should it rise to the level Defendant M. Portillo is attempting to falsely portray Plaintiffs actions the morning of May 27, 2021. (Id)

43. Defendant M. Portillo denies in his report that any of the events outlined in paragraph numbers 1 to 39 ever took place. Due to Defendant M. Portillo's complete denial, Plaintiff has therefore made numerous request to take a PolyGraph Exam in his defense, however his requests have gone ignored due to the misconduct directly surrounding correctional officers. When an inmate wants to "inform" prison officials of other inmates misconduct or illegal activity, prison officials often times utilize a PolyGraph Examination in order

to verify statements being provided by the "informant", is not fabricated with ulterior motives. However since the misconduct, is in this case, not involving inmates, but rather correctional officers, including an officer of rank (Leiutenant) and an officer who is an active Union Representative for the local CCPOA in Corcoran State Prison and because of the severity of the misconduct, prison officials have declined to respond to Plaintiffs many requests to take and successfully complete a PolyGraph Examination. With the filing of this complaint Plaintiff is still requesting and fully willing to take a PolyGraph Examination of the events outlined in this complaint.

44. On June 3, 2021 Plaintiff utilized the prison grievance system to file yet another grievance/staff complaint against Defendant M. Portillo for the continued retaliation methods, threats and assault on Plaintiff on May 27, 2021 (602 Log #128308). Approxiamately one month after the filing of the above mentioned grievance, on the evening of Tuesday July 6, 2021 a Lieutenant from the Office of Internal Affairs came to Plaintiffs housing to record and personally interview Plaintiff concerning grievance #128308. Plaintiffs grievance was assigned a response deadline of August 11, 2021. As of August 12, 2021 Plaintiffs grievance was still under investigation. As of the filing of this 42 U.S.C. §1983, Plaintiff has recieved no notification that the investigation has concluded. (SEE EG. EX. D pp. 2-3)

45. On July 2, 2021 Plaintiff was placed in restraints and escorted to his buildings rotunda and secured inside of a holding cage to have the disciplinary hearing from Defendant M. Portillo's report on May 27, 2021. The Disciplinary Hearing was being conducted by Defendant Lt. C. Brown. After Plaintiff had finished explaining what truely transpired on May 27, 2021 Defendant Lt. C. Brown stated "well, thats a nice story and all, but since none of my officers confirm what your saying, I find you GUILTY." Plaintiff pleaded with Defendant Lt. C. Brown to look at the case factors again, that an inmate witness confirms Plaintiffs 'story' and also Internal Affairs was also investigating this incident the hearing should wait until the investigation is complete. Defendant Lt. C. Brown shrugged his shoulders and said "doesnt matter what any one says, I decide". (EG. EX. C pp. 8-11 of 15)

46. As Defendant Lieutenant C. Brown just stared, shrugged his shoulders and shook his head

5.2

as his "mind was made up" told Plaintiff "Look you do me any favors, you agree to this (R.V.R.

(Defendant M.Portillo) and I'll just take 30 days and you can get that back, so whats it gonna be?" (Id AT pp.4-5 of 15)

47. Plaintiff was taken aback by Defendant Lt.C.Brown's mention of Defendant M.Portillo and thought "Why is he (Defendant Lt.C.Brown) trying to cover for Portillo?" Plaintiff, irritated at a biased system, refused Defendant Lt.C.Brown's offer/bribe and stated "this is prejudiced!". Immediately at Plaintiffs mention of 'prejudice', Defendant Lt.C.Brown became visibly aggressive and hostile towards Plaintiff saying "oh you think im prejudice? you think im fucking prejudiced?! I'll show you fucking prejudice! 10 days loss of yard, 30 days credit, 30 days no packages and your lucky thats ALL i can take from you. starting Now!" (Id AT pp.11,14 of 15)

48. Plaintiff was frustrated with the biased system of CDCR and told Defendant Lt.C. Brown that Plaintiff wants to take a PolyGraph Examination in connection with Defendant M. Portillo surrounding the events that occurred on May 27, 2021, the date of the authored Rules Violation. Plaintiff was told he had to pay for the PolyGraph Examination, and was es-corted back to his cell.

49. As Plaintiff was being escorted back to his cell, Defendant Lt.C.Brown announced to the building staff to "see to it he (Plaintiff) dont got shit coming!" Once Plaintiff was back inside of his cell he began drafting a grievance about the Disciplinary Hearing and Defendant Lt.C.Browns actions in violation of due process rights to have an im-partial decision maker.

50. On July 5, 2021 Plaintiff submitted appeal #136254 alleging staff misconduct by Defendant Lt.C.Brown. Plaintiff requested to be allowed to take a PolyGraph Examination as well as a fair and impartial decisionmaker. (Ex-E. pp.1-2)

51. On July 7, 2021 Prison officials denied Plaintiffs grievance against Defendant Lt.C.Brown as being "anticipatory, generally meaning the action has not happened yet" while failing to state the policy or regulation number that grants the denial. Prison officials did not address any part of plaintiffs appeal. (Id. At p.3)

5.3

52. Plaintiff sought further relief to the Chief of Appeals on Id. AT p. 20-21 on the grounds that, #1, an action that has already happened and therefore stipulated cannot, by principle, be anticipatory, and #2, the issue of the appeal is not being addressed. Plaintiff again requested fair and impartial treatment. Plaintiff was frustrated by the lack of adequate due process. (Id. AT. pp. 4-5)

53. On October 6, 2021 Plaintiff recieved response from the Chief of Appeals, that confirmed the appeal as being "anticipatory" so as to not have to acknowledge and address the staff misconduct and retaliation that is commonplace practice within CSP-Corcoran. (Id AT p.6)

54. Plaintiff alleges Defendant Lt. C. Brown violated his Due Process rights by denying Plaintiff to call witnesses, being an unbiased, neutral decisionmaker by already determining Plaintiffs guilt prior to the RVR hearing, ignored exculpatory evidence and was an active participant in engaging, enforcing, CDCR, the State $ Federal ban on "Code of Silence" by police and peace officers by attempting to bribe, blackmail Plaintiff by dismissing, "dropping everything against Portillo" in an attempt to seek favor and/or even a monetary gain from Defendant M. Portillo since he was (and still is at the time) Defendant Lt. C. Browns  CCPOA Union Representative here at CSP-Corcoran.

## E. REQUEST FOR RELIEF

State the relief you are seeking:

① Declare that the acts and omissions described herein violated Plaintiffs' rights under the Constitution and laws of the United States; ② Order Defendants to pay compensatory and punitive damages; ③ the amount of damages to be determined by jury trial ④ Order a Restraining order be placed against Defendant M. Portillo ⑤ The court appoint counsel to represent Plaintiff in this Action. ⑥ Order Defendants to pay any and all counsel fees

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _April 14, 2022_
DATE

_Christopher Davis_
SIGNATURE OF PLAINTIFF

_Ronald F. Martinez #T-86494_
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

Cover
Sheet

Inmate did not submit cover sheet
Scanned by C Jenkins
HDSP for Inmate Davis
AN4950 ~~AM 4950~~ C8-102

Scanned at CDCR and E-Mailed
on 4-18 by (C)
(date)     (initials)
Number of pages scanned:
24

( Including this cover
Sheet )