Christopher Davis CDC#AN4950
Name and Prisoner/Booking Number

High Desert State Prison
Place of Confinement

Facility C P.O. Box 3030
Mailing Address

Susanville, CA. 96127
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

FILED

MAY 10 2022

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Christopher Brandon Davis                )
(Full Name of Plaintiff)      Plaintiff,   )
                                          )
               v.                         )
                                          )
(1) M. Portillo, individual and official capacity,  )
(Full Name of Defendant)                  )
(2) Molina, individual and official capacity   )
                                          )
(3) C. Brown, individual and official capacity,  )
                                          )
(4) _____,        )
                    Defendant(s).         )
☐ Check if there are additional Defendants and attach page 1-A listing them.  )

CASE NO 1:22-CV-00457-BAK (HBK)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**
JURY TRIAL DEMANDED
☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
    ☐ Other: _____

2.  Institution/city where violation occurred: Corcoran State Prison, Corcoran CA.

RECEIVED

MAY 10 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____DEPUTY CLERK

## B. DEFENDANTS

1. Name of first Defendant: M. Portillo          . The first Defendant is employed as:
   Correctional Officer          at Corcoran State Prison          .
   (Position and Title)                    (Institution)

2. Name of second Defendant: Molina          . The second Defendant is employed as:
   Correctional Officer          at Corcoran State Prison          .
   (Position and Title)                    (Institution)

3. Name of third Defendant: C. Brown          . The third Defendant is employed as:
   Correctional Lieutenant          at Corcoran State Prison          .
   (Position and Title)                    (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as:
   _____at_____.
   (Position and Title)                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?     ☐ Yes     ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: FIRST AMENDMENT

2. **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☒ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   SEE PAGES 3.1 to 3.6

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   SEE p.3.5 pp#20, p.3.6 ⊓#21

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Claim I?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

CLAIm I, First Amendment, Retaliation

1) Christopher Brandon Davis "Plaintiff" is a state prisoner currently incarcerated in High Desert State Prison and currently serving consecutive terms of 12 years for Robbery with Gang Enhancement and 6 years for Battery on Non-confined Person, for total term of 18 years.

2) While housed at Corcoran State Prison in Administrative Segregation, on March 5, 2021 Plaintiff had a medical appointment scheduled at CTC for 10:00 Am. At approx. 5 am, Defendant M.Portillo and his partner came to my cell and asked me in an agitated manner "Are you going to the medical appointment or not?" Plaintiff responded, "Yes, but its in two hours"

3) A popular tactic amongst some CTC Transportation staff is to try and avoid going back and forth between CTC and the housing units to pick up inmates. If more than one inmate has a medical appointment from the same housing unit, despite the time of the appointment, the transportation staff will try to take all the inmates with scheduled appointments at the same time. Even though the appointments could be hours apart as in Plaintiffs case. Plaintiff would be standing, waiting in a single man, standing only holding cage hours before the appointment. Plaintiff has been previously subjected to this on a different occasion for 3 hours. Upon information, belief, knowledge and experience majority of inmates will refuse to go to their appointment all together just knowing they would be stuck standing for hours in the cage waiting for their appointment to be called.

4) Plaintiff alleges Defendant M.Portillo knows this and attempts to pick up inmates hours before their scheduled appointment in an effort to force the inmate to "refuse" their medical appointment, thus making "less work" for himself, especially during the summer when its hot. "C/O Portillo has a habit, routine or practice of being confrontational with prisoners during "strip-outs" in the hope of frustrating and or angering a prisoner into refusing the medical appointment in order to do as less work as possible. (SEE EXHIBIT A, DECLARATION OF RONALD MARTINEZ)

5) CTC Transportation officers have been warned not to do the above and accomodate the patient/inmate and pick them up 15/30 minutes before their scheduled appointment to avoid excess 'refusals' and a backlog of rescheduling the patient/inmate. So with a smirk on his face, Defendant M.Portillo told Plaintiff,

3.1

" You ain't got to go, You can refuse."

6.) Due to the time of day, as well as the time of the scheduled appointment, Plaintiff was busy at work on his college courses and had his paperwork arranged across his cell, bed and desk. Plaintiff asked Defendant M. Portillo if he could have a moment to put his work away and clean up[1]. Defendant M. Portillo became impatient and angrier and now said in a raised voice "ARE YOU GOING OR NOT!? HURRY UP I AINT GOT ALL DAY!"

7.) Observing Defendant M. Portillo's aggressiveness Plaintiff halted putting away his things and went to the cell door and began undressing for the mandatory departmental procedure of an unclo-thed body search prior to escort. When the body search was completed and Plaintiff was getting dressed and prepared for escort, Plaintiff then asked Defendant M. Portillo "Why are you here 2 hours early?". Defendant M. Portillo repeated himself "You dont have to go, You can refuse."

8.) At this point Plaintiff was finishing putting his clothing back on prior to being placed in restraints for escort and Plaintiff told Defendant M. Portillo, "When we get to CTC I want to speak with the sergeant," Defendant M. Portillo's supervisor. Instantly Defendant M. Portillo be-came very aggressive and slammed closed the tray slot and locked it. Then Defendant M. Portillo poin-ted his finger at Plaintiff angrily stating " YOU AINT DOING SHIT! YOUR NOT GOING NOWHERE! YOU REFUSED!" Then turned and walked away with his partner.

9.) Later in this day on March 5, 2021 Plaintiff alleges that in an attempt to justify Plaintiffs refusal to his medical appointment and to conceal his misconduct of lying that Plaintiff refused his medical appointment, Defendant M. Portillo vindictively and with malicious intent fabricated and drafted a CDC-114A Inmate Segregation Record stating "Inmate became hostile during his unclothed body search and made statements, `I know how you get down, fuck you. I aint stripping out! Your garbage!"

---

1. Prior to going to any scheduled appointment, medical or other wise, Plaintiff puts everything away to keep his living quarters clean and presentable as well as washes his face, brush teeth, combs hair to be presentable and maintain good hygiene habits.

3.2

10.) Defendant M. Portillo is well aware the CDC-114A's are permanent documents retained in Plaintiffs Central File and could have a negative impact on Plaintiffs future classifications and housing assignments. Defendant M. Portillo is not a 'rookie' and is an active representative in the CCPOA for Correctional Officers. Moreover Defendant M. Portillo is aware Plaintiff is a 'GP', General Population prisoner and the prison politics amongst the prisoners against any act of instigating antagonizing or escalating conflict with correctional officers in nature has the potential to cause serious harm to a 'GP' prisoner should it rise to the level Defendant M. Portillo is falsely portraying Plaintiffs actions on the morning of March 5, 2021.

11.) On March 5, 2021 Plaintiff filed an appeal/grievance for the second time alleging staff complaint/ staff misconduct with an adverse affect on Plaintiffs health, due to the denial of medical appointment concerning substance abuse treatment. (SEE EXHIBIT B p.1)

12.) Plaintiff alleges the incident on March 5, 2021 was not Defendant M. Portillo's first time conducting himself in such a disdainful manner when attempting to escort Plaintiff to his medical appointment at CTC for substance abuse treatment. Previously on February 5, 2020 Plaintiff filed grievance that went missing. (SEE EXHIBIT B, p.1-2)

13.) On April 17, 2021 Prison Officials denied Plaintiffs grievance against Defendant M. Portillo without interview of either party and decided solely on the claim made by Defendant M. Portillo documented on Plaintiffs CDC-114 folder, "Inmate became hostile during his unclothed body search and made statements, 'I know how you get down, fuck you, I aint stripping out! Your Garbage!", which justifies refusal according to Operational Procedure 220 Section 'J' security, "an unclothed body search shall be conducted within the assigned cell prior to the inmate being removed from the cell". (Id. AT pp.4-5)

14.) On April 22, 2021 Plaintiff sought relief at the CDCR Office of CHIEF of Appeals in Sacramento as Defendant M. Portillo's conduct on March 5, 2021 not being his first time displaying disdain toward inmates, nor is Plaintiff the first to accuse/allege Defendant M. Portillo of such unprofessional and reprehensible behavior, as well as the notification of Plaintiffs ability to call witnesses concerning Defendant M. Portillo's comments and conduct on March 5, 2021. (Id. AT p.6)

15.) On August 29, 2021 Plaintiff recieved response from CDCR Chief in Sacramento. The decision response was dated June 26, 2021 with the decision being "TIME EXPIRED". Time Expired means the Grievance Chief did not "have time" during the 60 days to respond to the complaint. This is a new policy CDCR is now using to get around having to answer inmates grievances. (Id AT p.9-10)

16.) Approxiamately 82 days after the date March 5, 2021 which Plaintiff submitted his grievance to complain about Defendant M.Portillo's misconduct and while awaiting response from the Chiefs Level, on May 27, 2021 Defendant M.Portillo and his partner Defendant Molina arrive at Plaintiffs cell door at approxiamately 8:30 am. Defendant M.Portillo asked Plaintiff if he was going to go to his medical appointment, to which Plaintiff said "Yes" and began to undress preparing for the unclothed body search protocol prior to escorting to the medical appointment. Defendant M.Portillo became angry and told Plaintiff he could not wear his personal socks, they have to be state issue, but allowed Plaintiff to wear his personal boxers and personal shoes. Because of prior confrontations by Defendant M.Portillo, and to avoid being removed from Plaintiffs substance abuse treatment program for missing medical appointments (2-5-2020, 3-5-2020) Plaintiff chose to not escalate Defendant M.Portillo's well known aggressive bahavior, and put on his shoes without socks. As Plaintiff was getting redressed he asked Defendant M.Portillo to speak to the Sergeant when they arrive at CTC medical appointment. Defendant M.Portillo immediately withdrew the escort restraints, slammed closed and locked the tray slot and said "You aint doing shit! Your REFUSING!" and took off with his partner Defendant Molina. While Defendant M.Portillo and Defendant Molina were walking away, Defendant M.Portillo made a gesture with one finger while exclaiming "Thats what happens when you want to act up!".

17.) Upon information, belief and knowledge, an unnamed Sergeant or his superior ordered a different and new escort team to escort Plaintiff to his medical appointment at CTC.

18.) A short while later, Defendant Molina and an unnamed officer arrived at Plaintiffs cell door to escort Plaintiff to his medical appointment. Defendant Molina conducted the unclothed body search without incident. During the process and preparing for escort, Plaintiff was briefly conversing

3.4

with Defendant Molina about his partner, Defendant M. Portillo conduct to which Defendant Molina replied "Thats my Partner, Ride or Die". After being placed in restraints and escorted out of the cell and down the stairs, unbeknownst to Plaintiff, Defendant M. Portillo was hiding under the stairs laying in wait for Plaintiff to be escorted directly to him. Once Plaintiff and Defendant Molina stepped off the stairs, Defendant Molina pulled Plaintiff by his escort guiding arm making a U-turn directing Plaintiff towards Defendant M. Portillo. Plaintiff was suprised, confused, then scared and frightened to see Defendant M. Portillo there waiting... Plaintiff pleaded with Defendant Molina to keep Defendant M. Portillo away from him for fear of injury. Defendant M. Portillo then grabbed Plaintiff by the back of the neck and pulled down to bring Plaintiffs right ear to Defendant M. Portillos mouth, so close Plaintiff could feel the heat off his breath. Defendant M. Portillo then spoke in a menacing voice and threatened Plaintiff by stating "You better listen and shut the fuck up or else you know!" which was immediately followed by a hard fist punch to Plaintiffs lower back, a right "kidney shot". Plaintiff made a hurting growl sound. Plaintiff was scared and wanted to yell out for help but was more afraid of that because Plaintiff feared Defendant M. Portillo would continue to assault and punch him even more and have his partner Defendant Molina jump in and assist with the assault on Plaintiff.

19.) Plaintiff did not say anything waiting for the suprise attack to continue. When nothing happened Plaintiff only nodded his head in submission to Defendant M. Portillo's demands and threats and remained silent filled with fear. Defendant M. Portillo laughed and said "there, now thats better".

20) Plaintiff alleges Defendant M. Portillo threatened him with future assaults, great bodily harm of injury and even death, then with a show of sincereity wantonly punched Plaintiff in the right kidney causing severe pain because of Plaintiff filing an inmate grievance against Defendant M. Portillo complaining of his misconduct of denying access to medical and fabricating CDCR documents. Plaintiff further alleges Defendant M. Portillo's retaliatory acts has chilled Plaintiff from excersizing his First Amendment Rights. Defendant M. Portillo's retaliatory threats and punch, assault on Plaintiff did not reasonably advance a legitimate correctional goal, Plaintiff alleges force was applied unnecessary and maliciously and sadistically with the specific intent to inflict pain and cause harm to Plaintiff

to prevent Plaintiff from filing future grievances and/or complaints against Defendant M. Portillo.

21.) Plaintiff further alleges Defendant Molina was deliberately indifferent to Plaintiffs safety by knowingly escorting Plaintiff directly to Defendant M. Portillo, ignoring the immediate threat and danger Defendant M. Portillo presented to Plaintiff as well as Plaintiffs pleas" to be kept away" from Defendant M. Portillo. Plaintiff alleges Defendant Molina failed to intervene and protect Plaintiff from his partner Defendant M. Portillo's threats and assault against Plaintiff. Defendant Molina acted with a sufficiently culpable state of mind as he held Plaintiff 'inplace' while allowing his partner Defendant M. Portillo to assault Plaintiff, to prevent Plaintiff from making excessive movement during the assault thereby not causing a scene so as to go unnoticed.

## CLAIM II

1. State the constitutional or other federal civil right that was violated: Eighth Amendment

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   SEE page 4.1 to 4.5

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   SEE p. 4.4 ¶ #38, p. 4.5 ¶ #39

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Claim II?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

CLAIM II, EIGHTH AMENDMENT, EXCESSIVE FORCE

22) The facts and allegations previously set forth in paragraphs 1 through 21 are incorporated herein by reference.

23) After Defendant M.Portillo's threats and hard punch to Plaintiffs lower right back "kidney shot", Defendants M.Portillo and Molina started escorting Plaintiff through the rotunda to the waiting transportation vehicle, wherein Plaintiff pleaded with Defendant Molina about his partner, Defendant M.Portillos' misconduct to which Defendant Molina replied " You know what you can do, make your move". Plaintiff was speechless and scared, staying silent filled with fear. As the escort arrived at CTC, Plaintiff stepped off the transport vehicle and took notice that no other escort officer was in sight, against department policy of two officers per inmate during escort, Plaintiff silently prayed for his safety as Defendant M. Portillo grabbed onto Plaintiffs waistchains and forcefully started doing the 'washing machine'[2] with the waistchains on Plaintiff while stating "Lets do this".

24.) Plaintiff knew exactly what Defendant M.Portillo was attempting to do, instigating Plaintiff to push back (resist) or verbally attack Defendant M.Portillo so he could use more excessive force against Plaintiff under the guise of "Resisting a Peace Officer in the performance of his duties" or other fabricated violation.

25.) Plaintiff was already very frightened, scared and in pain from the assault and threats that just took place a few minutes before by the stairs and did not want to give Defendant M.Portillo an excuse to beat on him again and giving Plaintiff an even more serious physical and mental injuries. So Plaintiff just prayed and stayed quiet trying very hard not to fall and just walk slow so Defendant M.Portillo would not make him trip and fall and crack his head or face on the ground since Plaintiffs hands and arms were

2. The 'washing machine' is an illegal tactic c/o's induce upon inmates they dont like, to justify a 'resist and a take down' by the officer usually followed by a beating of the inmate. The escorting c/o pulls and pushes on the waist chains front, back, side to side constantly which forces the inmate to loose balance, trip and fall, or cause the inmate to pull/push back or attempt to turn around, giving the escorting officer an excuse to take down / bodyslam the inmate while yelling (acting) "stop resisting! stop resisting!", while using other means of force.

cuffed to his waist.

26.) During this time C/O's knew they were about to be fitted with body cameras and cameras covering the entire facility and all "blind spots".[3] Plaintiff was terrified that Defendant M.Portillo and his partner Defendant Malina would eventually escort him to one of these many blindspots where there would be no witnesses to beat on, assault him again, with even more malice and force this time.

27.) The reason for the body cameras and need of constant surveillance of correctional officers is due to the numerous allegations of excessive force committed by correctional officers in the blind spots that include the allegations of inter alia, sodomy with foreign objects of expandable baton, fingers, and severe beating with baton, hands, feet, walls and floors.

28.) When Plaintiff finally got to the medical clinic and was seen by the Doctor, Plaintiff immediately told the Doctor he was in fear for his personal safety because of Defendant M.Portillo's threats and assault that took place only moments prior and Plaintiff was filled with anxiety and fear begging the Doctor to get a Sergeant or Lieutenant to oversee the situation and ensure Plaintiffs safety for the remainder of the medical appointment/escort. Plaintiff expressed to the Doctor he was threatened and assaulted by Defendant M.Portillo and is not safe being anywhere near or around Defendant M.Portillo. The Doctor responded by saying he can see the fear in Plaintiffs eyes and demeanor and he (Doctor) will take note of it in his records, however due to the confidentiality of the medical program[4] he could not and would not bring any supervisor, officer or otherwise into his office during the medical appointment. The Doctor told Plaintiff he would address the request to speak to a Sergeant or Lieutenant upon the conclusion of the medical appointment. The Doctor documented this conversation during Plaintiffs medical appointment on May 27, 2021. (SEE Exhibit C. p.2 of 3)

29) Plaintiff never spoke to a supervisor as Defendant M.Portillo rushed to get Plaintiff escorted out of CTC upon conclusion of Plaintiffs medical appointment. As Plaintiff was being escorted to the transport vehicle, Defendant M.Portillo continued subjecting Plaintiff to the "washing machine" and threatened

---

3. A 'blind spot' is a location within the prison where there is no visual from cameras, c/o's, inmates or staff throughout the prison which allows illegal activity to go unnoticed (i.e. assaults, beatings)

Plaintiff saying, "You think the Doctor gives a fuck?.. You heard him say its a custody issue! I'M CUSTODY PUNK! And I TOLD YOU TO SHUT THE FUCK UP ONCE ALREADY! "

30) Plaintiff was terrified. He believed certaintly Defendant M.Portillo was going to trip him up and beat on him or really take him to a blind spot now. Plaintiff had trouble breathing, was nervous, sweating and his heart was pounding. Plaintiff was affraid of death by baton at the hands of Defendant M.Portillo and his partner, Defendant Molina who just stared, "madd dogging"[5] Plaintiff.

31) Miraculously, Defendant M.Portillo was not able to trip up Plaintiff and escorted him back to his housing unit. Plaintiff was relieved to have made it to his housing unit and almost back into the safety of his cell without further assaults by Defendant M.Portillo or his partner Defendant Molina. ·· Plaintiff was wrong!

32) While being escorted back to Plaintiffs housing unit Defendant M.Portillo stopped the escort in the rotunda of Plaintiffs housing unit and forced Plaintiff against the wall saying " Look at the FUCKIN wall and DON'T MOVE! " in a forceful and angry tone. Defendant M.Portillo then yelled up to the buildings control booth to give him a "triangle".

33) The "triangle" is a thick piece of round stock metal that is shaped and welded like a triangle that is approximately 2' x 2' x 2'. The triangle is a modified attachment that locks onto the waist restraints which then prevents an inmate from keeping the waist chains once the inmate is placed in their cell. The c/o retains constant possession of the triangle attachment to ensure the retrieval of the waist chains from the inmate.

34) Inmates who keep the waist chains in their cell, while still cuffed entirely or partially, utilize this (stupid) tactic as a potential bargaining device to make requests or demands of custody staff to speak to a supervisor, a doctor or other things an inmate may feel he was wrongfully denied. Inmates who engage in this behavior are typically mental health participants and unruly inmates who are documented in their Central File

---

4. The substance abuse treatment is a confidential medical program between doctor and patient.

5. "Madd Dogging is a facial expression that portrays hate, dislike, malice towards the person they are looking at.

of the need to use a triangle for all escorts that require restraints.

35) Once the triangle attachment was secured onto Plaintiffs waist chain, Plaintiff was finally escorted back into his cell, always compliant. With Plaintiff inside the cell and triangle outside of the cell in Defendant M. Portillos possession, another officer unlocked the lock of the waist chain while still cuffed around the wrists, Plaintiff was turning around to place his wrists out of the tray slot to finish to being uncuffed, but before Plaintiff could be uncuffed, Defendant M. Portillo intentionally, maliciously and sadistically pulled, a hard yank on the triangle and the waist chains, causing Plaintiff to force his cuffed hands and arms outside the tray slot at a very odd angle, slamming Plaintiffs forearms into the tray slot, causing pain and bruising.

36) Plaintiff yelled in pain and then said to Defendant M.Portillo "What the fucks your problem! This shits unnecessary!" Defendant M. Portillo replied " This is what you get for reporting me! Its not over!". Defendant M. Portillo then backed off as another unnamed officer removed the cuffs." When the cuffs were removed, Defendant M. Portillo slammed and locked the tray slot and said, "Next Time." Leaving Plaintiff in pain, nervous and anxious of whats going to happen 'Next Time' during escort with Defendant M. Portillo and Defendant Malina.

37) Silently Plaintiff prayed for his safety and that the officers would get issued the mandatory body cameras as soon as possible with the knowledge they just might prevent Defendant M. Portillo and his friends, fellow officers from retaliation by beating, hitting on him in the future. Plaintiffs lower back and forearms was in pain and beginning to show signs of discoloration and bruising/swelling from Defendant M. Portillos assaults on Plaintiff.

38) Plaintiff alleges that Defendant M. Portillo used excessive force against him by acting with a sufficiently culpable state of mind by having his partner Defendant Malina, who was deliberately indifferent to Plaintiffs safety, to prepare Plaintiff for escort while he, Defendant M. Portillo hides under

6- Plaintiffs next medical appointment at CTC was on June 22, 2021 which Plaintiff refused going to still being in fear of what happened to him on 5-27-2021 and the threat of 'Next Time' still ever present as the body cameras had still not yet been installed.

the stairs were Plaintiff could not see him, waiting, lying in wait until his partner Defendant Molina brought Plaintiff down the stairs and delivered Plaintiff to him. Plaintiff also alleges Defendant M.Portillos threats of Great Bodily Harm or even death coupled with punching Plaintiff on the lower back right kidney, and Defendant M.Portillos attempts to make Plaintiff fall on the ground while doing the washing machine during escort was not warranted or needed except to cause Plaintiff to suffer and inflict unnecessary and wanton pain. Defendant M.Portillo and Defendant Molina could not have reasonably percieved Plaintiff as a threat to the safety of prison staff or other inmates for the fact that Plaintiff was fully restrained and handcuffed with waist restraints while compliant at all times.

39) Plaintiff also alleges Defendant M.Portillo and Defendant Molina caused Plaintiff to suffer emotional and mental anguish of inter alia, being in fear, anxiety and nervous of future escorts to CTC, medical/dental, loss of appetite, trouble sleeping as a result of constant nightmares of being assaulted by correctional officers and constantly being scared of Defendant M.Portillo and his fellow friends and c/o's for the fact that Defendant M.Portillo is a Union Representative in the CCPOA for all correctional officers in Corcoran State Prison and could order his friends and other c/o's to assault and/or threaten Plaintiff, as well as to create, modify, destroy informational chronos, forms, requests to be placed into Plaintiffs central file affecting future custody, program, housing and privilege assignment.

4.5

**CLAIM III**

1. State the constitutional or other federal civil right that was violated: First Amendment,
FOURTEENTH AMENDENT

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☒ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☒ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   See 5.1 to 5.4

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   See page 5.4, paragraph #154

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

5

CLAIM III ; FIRST AMENDMENT ; RETALIATION

40. The facts and allegations previously set forth in paragraph numbers 1-21 and 22-39 are incorporated herein by reference.

41. Upon conclusion of the events previously set forth, Plaintiff recieved a Rules Violation Report #7091239 authored by Defendant M. Portillo in response to the threats and assault upon Plaintiff. In Defendant M. Portillo's report, he again resorted to the tactic of choice, the fabrication of events and facts that will, upon first glance, clear Defendant M. Portillo of any misconduct. In doing so, Defendant M. Portillo vindictively and with malicious intent fabricated and drafted another CDC 114 and a Rules Violation Report in retaliation stemming from Plaintiff filing complaints and grievances against Defendant M. Portillo and his conduct, stating "Inmate became hostile and stated,' Oh, your gonna be that guy and check out my junk. You're so professional. You're the only mother fucker who does this shit, you have a fucking problem wanting to see another mans junk! Your a little bitch, fuck you punk." (SEE EG EX.C pp. 1 of 4 $ 1 of 3)

42. Defendant M. Portillo is well aware the documents retained in Plaintiffs Central File can have a negative impact on Plaintiffs future classifications and housing assignments. Moreover Defendant M. Portillo is aware Plaintiff is a General Population (GP) prisoner and the prison politics amongst the prisoners against any act of sexual misconduct up to and including harrassment, contact and references as in Plaintiffs case, has the potential to cause serious harm to a "GP" prisoner should it rise to the level Defendant M. Portillo is attempting to falsly portray Plaintiffs actions the morning of May 27, 2021. (Id)

43. Defendant M. Portillo denies in his report that any of the events outlined in paragraph numbers 1 to 39 ever took place. Due to Defendant M. Portillo's complete denial, Plaintiff has therefore made numerous request to take a PolyGraph Exam in his defense, however his requests have gone ignored due to the misconduct directly surrounding correctional officers. When an inmate wants to "inform" prison officials of other inmates misconduct or illegal activity, prison officials often times utilize a PolyGraph Examination in order

to verify the information provided by the "informant" is true and not fabricated with ulterior motives. However since the misconduct, is in this case, not involving inmates, but rather correctional officers, including an officer of rank (Leiutenant) and an officer who is an active Union Representative for the local CCPOA in Corcoran State Prison and because of the severity of the misconduct, prison officials have declined to respond to Plaintiffs many requests to take and successfully complete a PolyGraph Examination. With the filing of this complaint Plaintiff is still requesting and fully willing to take a PolyGraph Examination of the events outlined in this complaint.

44. On June 3, 2021 Plaintiff utilized the prison grievance system to file yet another grievance/staff complaint against Defendant M. Portillo for the continued retaliation methods, threats and assault on Plaintiff on May 27, 2021 (602 Log #128308). Approxiamately one month after the filing of the above mentioned grievance, on the evening of Tuesday July 6, 2021 a Lieutenant from the Office of Internal Affairs came to Plaintiffs housing to record and personally interview Plaintiff concerning grievance #128308. Plaintiffs grievance was assigned a response deadline of August 11, 2021. As of August 12, 2021 Plaintiffs grievance was still under investigation. As of the filing of this 42 U.S.C. §1983, Plaintiff has recieved no notification that the investigation has concluded. (SEE EG.EX.D pp. 2-3)

45. On July 2, 2021 Plaintiff was placed in restraints and escorted to his buildings rotunda and secured inside of a holding cage to have the disciplinary hearing from Defendant M.Portillo's report on May 27, 2021. The Disciplinary Hearing was being conducted by Defendant Lt. C. Brown. After Plaintiff had finished explaining what truely transpired on May 27, 2021 Defendant Lt. C. Brown stated "well, thats a nice story and all, but since none of my officers confirm what your saying, I find you GUILTY". Plaintiff pleaded with Defendant Lt. C. Brown to look at the case factors again, that an inmate witness confirms Plaintiffs 'story' and also Internal Affairs was also investigating this incident the hearing should wait until the investigation is complete. Defendant Lt. C. Brown shrugged his shoulders and said "doesnt matter what any one says, I decide". (EG EX.C pp 8-11 of 15)

46. As Defendant Lieutenant C. Brown just stared, shrugged his shoulders and shook his head

5-2

...as his "mind was made up" told Plaintiff "Look, you drop everything against Portillo

(Defendant M. Portillo) and I'll just take 30 days and you can get that back, so whats it gonna be?" (Id AT pp. 4-5 of 15)

47. Plaintiff was taken aback by Defendant Lt. C. Brown's mention of Defendant M. Portillo and thought "Why is he (Defendant Lt. C. Brown) trying to cover for Portillo?" Plaintiff, irritated at a biased system, refused Defendant Lt. C. Brown's offer/bribe and stated "this is prejudiced". Immediately at Plaintiffs mention of 'prejudice', Defendant Lt. C. Brown became visibly aggressive and hostile towards Plaintiff saying "oh you think im prejudice!? you think im fucking prejudiced?! I'll show you fucking prejudice! 10 days loss of yard, 30 days credit, 30 days no packages and your lucky thats ALL i can take from you. Starting Now!" (Id AT pp. 11, 14 of 15)

48. Plaintiff was frustrated with the biased system of CDCR and told Defendant Lt. C. Brown that Plaintiff wants to take a PolyGraph Examination in connection with Defendant M. Portillo surrounding the events that occurred on May 27, 2021, the date of the authored Rules Violation. Plaintiff was told he had to pay for the PolyGraph Examination, and was escorted back to his cell.

49. As Plaintiff was being escorted back to his cell, Defendant Lt. C. Brown announced to the building staff to "see to it he (Plaintiff) dont got shit coming!" Once Plaintiff was back inside of his cell he began drafting a grievance about the Disciplinary Hearing and Defendant Lt. C. Browns actions in violation of due process rights to have an impartial decision maker.

50. On July 5, 2021 Plaintiff submitted appeal #136254 alleging staff misconduct by Defendant Lt. C. Brown. Plaintiff requested to be allowed to take a PolyGraph Examination as well as a fair and impartial decisionmaker. (Ex. E. pp. 1-2)

51. On July 7, 2021 Prison officials denied Plaintiffs grievance against Defendant Lt. C. Brown as being "anticipatory, generally meaning the action has not happened yet" while failing to state the policy or regulation number that grants the denial. Prison officials did not address any part of plaintiffs appeal. (Id. At. p. 3)

5.3

· 52. Plaintiff sought further relief to the Chief of Appeals from July 27, 2021 on the grounds that, #1, an action that has already happened and therefore stipulated cannot, by principle, be anticipatory, and #2, the issue of the appeal is not being addressed. Plaintiff again requested fair and impartial treatment. Plaintiff was frustrated by the lack of adequate due process. (Id. AT. pp. 4-5)

53. On October 6, 2021 Plaintiff recieved response from the Chief of Appeals, that confirmed the appeal as being "anticipatory" so as to not have to acknowledge and address the staff misconduct and retaliation that is commonplace practice within CSP-Corcoran. (Id AT p.6)

54. Plaintiff alleges Defendant Lt. C. Brown violated his Due Process rights by denying Plaintiff to call witnesses, being an unbiased, neutral decisionmaker by already determining Plaintiffs guilt prior to the RVR hearing, ignored exculpatory evidence and was an active participant in engaging, enforcing, CDCR, the State & Federal ban on "Code of Silence" by police and peace officers by attempting to bribe, blackmail Plaintiff by dismissing, "dropping everything against Portillo" in an attempt to seek favor and/or even a monetary gain from Defendant M. Portillo since he was (and still is at the time) Defendant Lt. C. Browns  CCPOA Union Representative here at CSP-Corcoran.

# CLAIM IV

1. State the constitutional or other federal civil right that was violated:

First Amendment

2. Identify the issue involved: Retaliation

3. Supporting facts: SEE PAGES 5-A.1 to 5-A.10

4. Injury: SEE PAGE 5-A.10 ¶¶ 89-90

5. Administrative Remedies

a. Are there any administrative remedies available at your institution?

☒ YES   ☐ NO

b. Did you submit a request for administrative relief on Claim IV? ☒ YES ☐ NO

c. Did you appeal your request for relief on Claim IV to the highest level?

☒ YES   ☐ NO

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. N/A

CLAIM IV, "FIRST AMENDMENT, ONGOING CAMPAIGN OF HARRASSMENT

55. On September 27, 2021 despite Plaintiffs ongoing complaints of the retaliatory tactics and methods of Defendant M. Portillo against Plaintiff, as well as the still ongoing Internal Affairs investigation into the events of May 27, 2021, Defendant M. Portillo intentionally requested overtime work in Plaintiffs housing unit, and was granted despite all of the requests for "keep away" order be placed against Defendant M. Portillo.

56. During Security checks, Defendant M. Portillo made his way throughout the building and as he made his way to check on Plaintiff, Defendant M. Portillo gave Plaintiff a malicious and disdainful look while nodding his head up and down multiple times stating, "I told you I'll always be around", to intimidate Plaintiff before moving on to continue security checks.

57. Plaintiff was left in his cell in fear of what Defendant M. Portillo is capable of doing and getting away with inside the institution due to his position within CCPOA. Plaintiff was nervous and anxious fearing for his safety due to the immediate presence of Defendant M. Portillo, and his last threat of "Next Time" was ringing in Plaintiffs ear... was this "Next Time"?

58. Plaintiff could only do what he could to keep busy and not think of all the different possibilities of being assaulted by Defendant M. Portillo, although the attempts were futile. Around 4 p.m. a correctional officer made his way to Plaintiffs door passing out dinner meals, but before recieving the dinner meal, Plaintiff asked if Defendant M. Portillo had access to the food, and the officer replied "Yes". Plaintiff then refused to accept his dinner meal (Plaintiff recieves a special diet) in fear for his health and safety knowing through experience of the retaliation abilities of Defendant M. Portillo and his ability to "spike" Plaintiffs dinner meal. Plaintiff instead opted out of dinner and preferred going hungry rather than risking coming down with a "mysterous illness".

5-A.1

59. During the evening mail call, an unnamed officer came to Plaintiffs cell door and handed him multiple ducated medical appointments scheduled for the following day, September 28, 2021 to CTC, Defendant M.Portillos regular work assignment as well as a medical appointment with the facility medical. Prior to the issuance of scheduled ducats, Defendant M.Portillo has access to review them, therefor enabling him to 'plan ahead' for the following days scheduled CTC appointments.

60. On the following morning, September 28,2021 at approxiamately 8:30 am the facility medical escort officers arrive to escort Plaintiff to the facility (4A) medical to see the nurse about ongoing and more severe back pain issues along with his wrist, the outcome of Defendant M.Portillo's assault on Plaintiff May 27, 2021

61. While Plaintiff was being escorted to facility 4A medical, 2 (two) CTC escort officers arrive to escort Plaintiff to his CTC medical appointments. As a result of Defendant M.Portillo's threats and prior assaults including the non-verbal threat the previous day, fearing for his safety Plaintiff asked the CTC escort officers "if Portillo is working there?", the officer replied "Yes, do you want to go?" Plaintiff briefly explained to the CTC escort officer that he does not want to go to CTC if Defendant M.Portillo is there because of prior acts of retaliation, threats, and assault against Plaintiff. There are many blind spots still available, as of this date (Sept. 28, 2021) the facility cameras were not yet active or fully operational. Although the body cameras are mandatory for all correctional officers, the correctional officers can turn the body cameras on and off as they choose with the simple press of a button on the body camera.

62. After Plaintiff explained his reason for refusing the days medical appointments at CTC, the facility medical officers continued to escort Plaintiff out of his housing unit building. Immediately exiting the building Plaintiff found both Defendant M.Portillo and Defendant Molina, both waiting out of sight for Plaintiff to be delivered to them! Thank GOD Plaintiff refused his CTC medical appointments.

5 - A . 2

63. Plaintiff has now out of fear for his safety had to miss multiple important medical appointments at CSP-Corcoran CTC due to the unequivocal vindictiveness of Defendant M. Portillo by means of force, threats, physical assault, degradation and dehumanization by vocalization, force or other means such as fabricating permanent documents in Plaintiffs Central File that have the possibility of bringing future physical harm or even death to Plaintiff. The only way for Plaintiff to protect himself now and in the future from all methods is to refuse any and all CTC medical appointments that Defendant M. Portillo has been verified as being present, which has an adverse affect on Plaintiffs physical and mental health. (SEE Ex F.)

64. On September 30, 2021 while working on some paperwork, Plaintiff heard a knock on his door, and looked at his door in utter shock. Standing at Plaintiffs door was Defendant M. Portillo, grinning while asking Plaintiff if he wants to go to his CTC medical appointment? Plaintiff got extremely nervous and anxious causing a "hot flash" while his thoughts were racing `is this the "Next Time" Defendant M. Portillo promised'? Plaintiff, although safe inside his cell, began shaking and took a deep breath and refused to go to his medical appointment so he would not be beat on by the hands of Defendant M. Portillo.

65. Plaintiff prayed that it would stop and he would be left alone, and not have to fear for his safety. The following day, on October 1, 2021 at approxiamotely 3 pm, the process of recalling the yard began. Plaintiff recognized Defendant M. Portillo and addressed the yard officer of the ongoing retaliation and harrassment by Defendant M. Portillo against Plaintiff, and despite having more than 5 other officers assisting in the escorting of inmates back to their cells, Plaintiff feared that Defendant M. Portillo would make certain he was available to escort Plaintiff if only for a confrontation. Plaintiff announced to the yard officer that if that happens, Plaintiff would not allow himself to be escorted by Defendant M. Portillo under any circumstances, however if it is any other officer, Plaintiff would fully comply.

5-A.3

66. Plaintiff was then the last inmate to be escorted back into his cell. While Plaintiff was the last inmate on the yard, (the yard consists of 2 rows of cages, with approx. 15 cages per row) Plaintiff watched as Defendant M. Portillo insisted to the other officers that he was going to escort Plaintiff. Defendant M. Portillos last threat "Next Time" began ringing in Plaintiffs ears, despite being inside of the yard cage Plaintiff became very anxious, his heart pounding and mouth went dry. As Defendant M. Portillo arrived with another officer, Plaintiff announced as best he could to Defendant M. Portillo that he (Plaintiff) would not step out of the yard cage into Defendant M. Portillos custody because of past assaults, threats and fabricated documents by Defendant M. Portillo. Defendant M. Portillo did not at any point deny any of Plaintiffs allegations, rather Defendant M. Portillo shrugged his shoulders and said "Ya so? Do you want another write up for delaying duty?"

67. Plaintiff told Defendant M. Portillo, "Go ahead. Try to tell the truth this time", but Defendant M. Portillo only gave a slight laugh and stated "No not me, One of them will do it." (referring to the other officers present) Plaintiff responded that he is not trying to delay anything or cause issues and stated "Just as you c/o's dont trust an inmate who has assaulted and/or threatened you and you dont want that inmate/person around you for safety reasons, well that person for me is Defendant M. Portillo and I am not safe with him around me."

68. As Defendant M. Portillo was refusing to leave (he was not needed to assist in the escort as by this time 4 (four) officers where present) Plaintiff then requested one of the officers to get the Sergeant involved. Defendant M. Portillo through knowledge and experience knew with no doubt that Plaintiff would not leave the safety of the cell/cage so long as Defendant M. Portillo was present. Defendant M. Portillo continues to utilize this knowledge/experience to negatively impact Plaintiffs mental health along with

5-A.4

positive rehabilitation at every opportunity presented him.

69. After a minute or so, the other officers pleas with Defendant M. Portillo to "just leave", Defendant M. Portillo looked at Plaintiff and started shaking his head as he reluctantly turned and walked away. Once Defendant M. Portillo was out of the immediate area, Plaintiff complied and was placed in restraints and escorted without incident to his cell. Plaintiff was never issued an RVR for delaying duty as threatened.

70. As this incident took place, multiple building cameras placed in various positions on Facility 4A building 4, caught on video the officers present and recorded/stored. An investigation and review of the video footage will validate Plaintiffs claim.

71. Defendant M. Portillos regular work assignment is Monday through Friday as CTC escort officer. However as of September, October, November, Defendant M. Portillo has on multiple occasions requested and granted over time and weekends assignment in Plaintiffs housing unit in addition to his regular work assignment.

72. About the time that Defendant M. Portillo began requesting work assignments near Plaintiff, was shortly after Plaintiff began adamantly filing grievances and staff complaints against the Defendants including Grievance # 149556 specifically requesting a PolyGraph Examination in accordance to CCR Title 15 Division 3 section 3293 in contest to the assault and threats against Plaintiff by Defendants M. Portillo and Molina as well as violations by Defendant Lt. C. Brown that Defendant M. Portillo began to make a sincere effort to dissuade and prevent Plaintiff from pursuing legal actions against Defendants M. Portillo, Molina, and C. Brown. A review of Defendant M. Portillo's employee and personell files will provide further information and detailed work assignments. (SEE EX G - pgs 1-3 of 3)

73. The following day, on October 2, 2021 Plaintiff was scheduled to take a pre-visit COVID-19 (SARS-CoV-19) test as per the covid protocols due to the current pan-

-demic to minimize the spread of Covid 19. If an unvaccinated inmate, such as Plaintiff at that time, for any reason does not take and provide a 'negative' COVID 19 test prior to the scheduled deadline, per covid protocols, the inmate forfeits his ability to attend the scheduled visit. However, the visitors recieve no notification and proceed to the institution to visit the inmate as scheduled, as in Plaintiffs case. Defendant M. Portillo is well aware of CovID 19 protocols and the consequences for failure to provide a negative test.

74. Plaintiff has taken multiple pre-visit Covid 19 test prior to this, each time Plaintiff was issued the previsit Covid 19 test, Plaintiff was inside of his cell, never escorted to any other location, except now when Defendant M. Portillo was again working overtime in Plaintiffs housing unit with the knowledge and experience Plaintiff wont step out of his cell while Defendant M. Portillo is present.

75. At approxiamately 5:45 pm, while Plaintiff was doing legal research preparing to file his 42 U.S.C. §1983 complaint with the courts concerning Defedant M. Portillo (which through word of mouth Defendant M. Portillo was aware) an unnamed officer who was wearing all of the proper protective equipment (PPE) as required by ASU department policy as well as Covid 19 policy, and, Defendant M. Portillo, who, as usual was not wearing the proper equipment, arrived at Plaintiffs cell door to notify him that if he (Plaintiff) wanted to take the mandatory previsit covid 19 test, then Plaintiff needed to be escorted downstairs to the building rotunda.

76. Plaintiff recognized the unnamed officer and directed his conversation toward her. Plaintiff announced to the unnamed officer that "Yes" he does want to take the previsit Covid 19 test (Plaintiff was looking forward to visiting with his mother and father), however Plaintiff does not feel safe in the custody of Defendant M. Portillo (Defendant M. Portillo's threat of 'Next Time' was constantly present) especially when

S - A - 6

this escort required walking down a flight of stairs, in restraints, while in front of Defendant M.Portillo that could very well prove fatal to Plaintiff.

77. As Plaintiff was explaining his fears and reasons with the unnamed officer, Defendant M.Portillo became impatient and interrupted Plaintiff, asking if Plaintiff "was going to take the test or not". Plaintiff continued to explain to the unnamed officer of the abuse Plaintiff has been continually subjected to either personally at the hands of, or the direction of Defendant M.Portillo. Defendant M. Portillo made no objection nor did he deny any claim made by Plaintiff. Both the unnamed officer and Defendant M.Portillo were wearing and recording with their individual Body Worn Camera (BWC).

78. After explaining concerns to the unnamed officer, it was decided that another officer would come and assist with the escort, replacing Defendant M. Portillo to allow Plaintiff safe escort to take his Covid-19 test to be able to visit his family the following day. Defendant M.Portillo has firsthand knowledge and experience Plaintiff would not step out of the safety of his cell for any reason around Defendant M.Portillo. As the unnamed officer was preparing the waist chains for escort, the tray slot was opened and Plaintiff was preparing himself for escort. Defendant M.Portillo, not wanting Plaintiff to be allowed to take his covid 19 test, instead deliberately and vindictively closed and locked the tray slot stating "No, we are marking you as a refusal" and walked off.

79. The unnamed officer, after leaving the building section then went and alerted the on duty Sergeant of what had just occured.

80. Plaintiff then proceeded to draft and file a CDCR GRIEVANCE 602-1 explaining the events outlined in paragraph # 73 through 79, which was assigned log# 172283. Grievance Log # 172283 was then assigned to AIMS for investigation (similar to

Internal Affairs) On March 4, 2022 while temporarily housed at California Substance Abuse Treatment Facility (C-SATF), Plaintiff was interviewed by AIMS Lieutenant T. Arther concerning Grievance Log # 172283. As of this date of filing, Plaintiff has recieved no notification from AIMS of any closure in the investigation, as is required upon completion. (SEE E6. EX. H.)

81. Due to Defendant M.Portillos actions, deliberate and intentional, Plaintiff was then not allowed to go to his scheduled visit the following day. After speaking with 2(two) Sergeants, Plaintiff was allowed to call his family by the grace of God to alert them of the situation and for his parents, mother and father not to come to the scheduled visit. At the time of the call, Plaintiffs parents were already en route approxiamately 1/4 (one quarter) of the way to the prison for the scheduled visit. The cancellation of the visit significantly heightened Plaintiffs anxiety levels and perturbed Plaintiffs mother to the point of crying tears during the phone call because of the ongoing ill treatment Plaintiff is subjected to by Defendant M.Portillo. (SEE Ex.F)

82. On various days Defendant M.Portillo has requested work assignment in Plaintiffs housing unit. On October 30, 2021 specifically, Defendant M.Portillo while working morning shift (6 a.m. to 2 p.m.), did security checks to check on the well-being of the inmates at approxiamately 8:40 a.m.. When Defendant M.Portillo made his way in front of Plaintiffs cell door, Plaintiff was standing at his cell door as he was conversating with his neighbor. However when Defendant M.Portillo arrived, silence ensued. Defendant M. Portillo paused and stared Plaintiff up and down while shaking his head and then walked off to continue security checks

83. As Plaintiff continued conversating with his neighbor, the neighbor noted saying "That c/o does not like you". When Defendant M.Portillo was done doing his security checks and about to exit the building section, Defendant M.Portillo stopped,

5-A.8

turned around and while looking right at Plaintiff Defendant M. Portillo pulled out his state issued baton and began tapping it against the concrete wall a few times, then simultaneously shaking his head while putting away the baton back inside of its holster. (SEE Ex. I Declaration of Gilberto Hernandez)

84. Plaintiffs fear and anxiety levels increased significantly causing Plaintiff to have multiple severe 'hot flashes' covering Plaintiff in sweat.

85. On November 4, 2021 Plaintiff had a scheduled medical appointment at CTC, Defendant M. Portillo's regular work assignment. Prior to the scheduled appointment, Defendant M. Portillo and an unnamed officer arrived at Plaintiffs cell door to escort Plaintiff to his scheduled medical appointment at CTC. Due to the ongoing investigation and retaliatory tactics and actions including the assault and threats by Defendant M. Portillo, in response to Defendant M. Portillos question "if Plaintiff was going to go to his medical appointment or not" Plaintiff requested that a Sergeant be present during the tranport/escort.

86. Upon mention of a Sergeant being present Defendant M. Portillo immediately began to protest and then proclaimed that he is instead marking Plaintiff as a refusal for the scheduled appointment...again.

87. At this time, officers wore the mandatory Body Worn Camera (BWC). Plaintiff then proceeded to file Grievance against Defendant M. Portillo for ongoing retaliation, which was assigned log # 185380. (SEE EG. EX. J)

88. On February 8, 2022 Plaintiff was interviewed by AIMS Lieutenant Tomal regarding the incident on November 4, 2021 grievance log # 185380. The AIMS investigation was assigned log # C-AIMS-COR-2961-21. As of this date Plaintiff has recieved no notification of the closing of the investigation, as required.

89. Plaintiff alleges that Defendant M. Portillo continued his retaliatory animus against Plaintiff by inter alia Defendant M. Portillo continued his threats of serious harm, injury or death, interference with Plaintiffs ability to access medical treatment, family visits. and issuing false RVR of 5-27-2021 (ANTE ₱ 41), because of the protected conduct of previously filed grievances and complaints by Plaintiff that resulted in numerous Internal Affairs investigations. Plaintiff further alleges Defendant M. Portillos actions chilled the excersizing of Plaintiffs First Amendment Rights, nor, did Defendant M. Portillos actions reasonably advance a legitimate correctional goal. In addition, Plaintiff alleges that Defendant M. Portillo acts and believes that he is beyond reproach and is above all CDCR, State and Federal Regulations/Laws by proxy of being an Union Representative for the CCPOA at CSP-Corcoran during the events outline within this complaint.

90. Plaintiff further alleges Defendant M. Portillo through knowledge and experience intentionally denied and delayed Plaintiff access to medical care and intentionally interefered with the treatment Plaintiff prescribed.

5-A. 10

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

① Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States; ② Order Defendants to pay compensatory and punitive damages; ③ the amount of damages to be determined by jury trial ④ Order a Restraining order be placed against Defendant M. Portillo ⑤ THE court appoint counsel to represent Plaintiff in this Action. ⑥ ORDER Defendants to pay any and all counsel fees

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __April 25, 2022__
  DATE

_Christopher Davis_
SIGNATURE OF PLAINTIFF

__Ronald F. Martinez #T-86494__
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)
_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages.   If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, Christopher Brandon Davis , declare:

I am over 18 years of age and a party to this action. I am a resident of High Desert

State Prison.

in the county of Susanville

State of California. My prison address is: Christopher Davis  CDC# AN4950, Facility C,

P.O. Box 3030, Susanville Ca, 96127

On April 25, 2022

(DATE)

I served the attached: 42 U.S.C. § 1983 Case # 1:22-CV-00475-BAK, First

Amended complaint, Motion for Appointment of Counsel,

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

Clerk of the Court
Room 1501
United States District Court
Fresno, California . 93721

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on April 25, 2022       Christopher Davis

(DATE)                          (DECLARANT'S SIGNATURE)

-9-